# EXHIBIT A



**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**

August 1, 2025

By E-Request Form

Meredith Schlaifer, Deputy Director
Division of Headquarters Freedom of Information, ODIGA
U.S. Food & Drug Administration
5630 Fishers Lane
Room-1035
Rockville, Maryland 20857

Re:     Request Under Freedom of Information Act
        Expedited Processing & Fee Waiver Requested

Dear Ms. Schlaifer,

This is a request for production of records (the "Request") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the implementing regulations of the U.S. Food and Drug Administration ("FDA" or "the agency") by the American Civil Liberties Union Foundation ("ACLU"). The ACLU seeks expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E), and a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A) and 21 C.F.R. § 20.46, the justifications for which are set out in detail following the Request.

As set forth below, the ACLU seeks materials relating to any formal or informal assessment and/or review of NDA 020687 (Mifeprex) and ANDA 091178 (collectively, "mifepristone") considered or initiated after January 19, 2025, as well as any communications relating to mifepristone after January 19, 2025, between FDA and any individual or entity, including but not limited to Congressional officials or personnel; state officials or personnel; officials or personnel at the Department of Health and Human Services ("HHS"), White House, Trump-Vance Transition Team, and/or Office of Management and Budget ("OMB"); and the entities specified below or any agent of those entities.

1



## I.    **Definitions**

For purposes of this Request:

- "Materials" includes but is not limited to any and all writings (such as letters, emails, memoranda, publications, SMS messages, and messages on applications such as Signal, Telegram, iMessage, WhatsApp, Slack, and Microsoft Teams), presentations, datasets, graphs, charts, tables, files, electronic or computerized data compilations, objects, drawings, photographs, audiotapes, videotapes, minutes, transcripts, and notes, regardless of whether such record was created, received, and/or stored for any period of time on any official's or personnel's personal phone, computer, email account, messaging account, or in their personal files. *See* 5 U.S.C. § 552(f)(2) (defining "record" for purposes of FOIA to include "any information that *would be an agency record subject to [FOIA] when maintained by an agency* in any format" (emphasis added)). "Materials" encompasses records kept in both written form and electronic format; drafts; notes of oral communications; and non-identical copies, including reproductions that differ in any way from any other reproduction, such as copies containing marginal notations.

- "Individual" means any person.

- "Entity" includes but is not limited to any group, association, company, organization, or committee.

- "FDA" includes but is not limited to any components, subdivisions, centers, offices, or officials or personnel therein.

- "Officials or personnel" includes but is not limited to any elected or appointed officials; individuals who were not yet appointed and/or confirmed as of January 19, 2025, but were appointed or confirmed prior to the final date of any search, *see McGehee v. CIA,* 697 F.2d 1095, 1104 (D.C. Cir. 1983); staff; consultants; contractors; volunteers; or agents acting on behalf of the specified government entity.

125 Broad Street, Floor 18, New York, NY 10004 | jkaye@aclu.org | 212-549-2633



## II.   <u>Request</u>

*First,* please provide:

(a) any and all materials relating to the "review" of mifepristone discussed by Commissioner Makary in a letter to Sen. Josh Hawley dated June 2, 2025.[1]

(b) any and all materials not covered by (a), and dated between January 19, 2025, and the final date of any search, *see McGehee,* 697 F.2d at 1104, that relate to whether FDA has considered, is considering, or intends to consider changes to mifepristone's approval, labeling, and/or REMS, including but not limited to communications from Secretary Kennedy or Commissioner Makary (which should include, where applicable, any communications sent from Secretary Kennedy or Commissioner Makary prior to their confirmations) to officials or personnel within FDA about conducting a formal or informal assessment and/or "review" of mifepristone's approval, labeling, and/or REMS;

(c) any and all materials not covered by (a)-(b), and dated between January 19, 2025, and the final date of any search, that identify the criteria for any formal or informal assessment and/or "review" of mifepristone, including but not limited to:

    a. the criteria for any literature review FDA has conducted, is conducting, or intends to conduct;

    b. the sources of information that FDA has reviewed, is reviewing, or intends to review;

    c. how FDA obtained, analyzed, and applied such information to its analysis, is obtaining, analyzing, or applying such information to its analysis, or intends to obtain, analyze, and apply such information to its analysis;

    d. the time period that FDA has used, is using, or intends to use for its literature search;

---

[1] Alejandra O'Connell-Domenech, *FDA Commissioner Pledges to Investigate Mifepristone*, The Hill (June 3, 2025, 2:31 PM), https://thehill.com/policy/healthcare/5330774-marty-makary-fda-mifepristone-review/.

125 Broad Street, Floor 18, New York, NY 10004 | jkaye@aclu.org | 212-549-2633



e.  whether FDA has excluded, is excluding, or intends to exclude certain categories of evidence from such formal or informal assessment and/or "review"; and

f.  any other materials not otherwise captured by one of the requests above that discuss or define the parameters, scope, and/or focus of any formal or informal assessment and/or "review" of mifepristone after January 19, 2025;

(d)  Any and all materials not covered by (a)-(c), and dated between January 19, 2025, and the final date of any search, that otherwise address the safety and/or efficacy of mifepristone (in general or as provided for certain indications, to specific populations, in combination with other drugs, and/or based on the manner, method, and/or conditions under which mifepristone is prescribed and/or dispensed to patients); the need for changes to mifepristone's approval, labeling, and/or REMS for any reason (including but not limited to concerns about alleged "coercion" of mifepristone users[2]); and/or the impact of any changes thereto.

(e)  Any and all materials not covered by (a)-(d), and dated between January 19, 2025, and the final date of any search, that update, amend, or otherwise address FDA's Memorandum to File of December 23, 2022, regarding interactions between the mifepristone REMS and federal law, including but not limited to letters, memoranda, or other materials addressing interactions between the mifepristone REMS and federal law without expressly referencing the Memorandum.

*Second*, please provide any and all communications relating to mifepristone between FDA and *any* individual or entity between January 19, 2025, and the final date of any search. *See* 5 U.S.C. § 552(f)(1); 21 C.F.R. § 20.103; 21 C.F.R. § 20.111. This Request includes but is not limited to the following:

(a)  Any and all materials relating to mifepristone sent by FDA to Alliance Defending Freedom, Alliance for Hippocratic Medicine, American Association

---

[2] Dasha Burns, *FDA Commissioner Has 'no preconceived plans' for Abortion Pill Policies*, Politico (July 25, 2025, 5:30 AM), https://www.politico.com/video/2025/07/25/fda-commissioner-has-no-preconceived-plans-for-abortion-pill-policies-the-conversation-1690183.

4

of Pro-Life OBGYNs, American College of Family Medicine, American College of Pediatricians, Americans United for Life, Charlotte Lozier Institute, Christian Medical and Dental Association, Coptic Medical Association of North America, Ethics and Public Policy Center, Foundation for the Restoration of America, National Right to Life Committee, and/or Students for Life of America, or to staff or other agents of these entities, after January 19, 2025;

(b) Any and all materials relating to mifepristone received by FDA from Alliance Defending Freedom, Alliance for Hippocratic Medicine, American Association of Pro-Life OBGYNs, American College of Family Medicine, American College of Pediatricians, Americans United for Life, Charlotte Lozier Institute, Christian Medical and Dental Association, Coptic Medical Association of North America, Ethics and Public Policy Center, Foundation for the Restoration of America, National Right to Life Committee, and/or Students for Life of America, or from staff or other agents of these entities, after January 19, 2025, regardless of whether FDA was the original, primary, or intended recipient of such materials;

(c) Any and all materials relating to mifepristone received by FDA from any individual or entity requesting greater restrictions on mifepristone, other than the entities enumerated in (b), after January 19, 2025, regardless of whether FDA was the original, primary, or intended recipient of such materials;

(d) Any and all materials relating to mifepristone sent by FDA to Congressional or state officials or personnel after January 19, 2025;

(e) Any and all materials relating to mifepristone received by FDA from Congressional or state officials or personnel after January 19, 2025, regardless of whether FDA was the original, primary, or intended recipient of such materials;

(f) Any and all materials relating to mifepristone sent by FDA to officials or personnel at the White House, Trump-Vance Transition Team, and/or OMB, after January 19, 2025;

5



(g) Any and all materials relating to mifepristone received by FDA from officials or personnel at the White House, Trump-Vance Transition Team, and/or OMB, after January 19, 2025, regardless of whether FDA was the original, primary, or intended recipient of such materials;

(h) Any and all materials relating to mifepristone sent by FDA to officials or personnel at HHS after January 19, 2025.

(i) Any and all materials relating to mifepristone received by FDA from officials or personnel at HHS, after January 19, 2025, regardless of whether FDA was the original, primary, or intended recipient of such materials.

## III.    Search & Production

As noted above, please treat the date of FDA's *final* search for materials responsive to this Request as the search cut-off date. *See*, *e.g.*, *McGehee,* 697 F.2d at 1104 (holding that a date-of-search cutoff is more reasonable than a date-of-request cut-off because it "results in a much fuller search and disclosure"). In responding to this Request, please provide notice of the exact search cut-off date utilized.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive electronic records be provided electronically in their native file format, if possible. Alternatively, the ACLU requests that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files. Please do not compress images or down-sample the resolution, as this interferes with their legibility.

We request that you produce responsive materials in their entirety, including all attachments, appendices, enclosures, and/or exhibits. However, to the extent that a response to this Request would require FDA to provide multiple copies of identical material, the request is limited so that only one copy of the identical material is requested. Where an email is responsive to this Request, our Request includes all prior messages sent or received in that email chain, as well as any attachment(s) to the email.

6



In the event you determine that responsive materials contain information that falls within the statutory exemptions to mandatory disclosure, we request that such information be reviewed for possible discretionary disclosure. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 293 (1979); 21 C.F.R. § 20.82. We also request that, in accordance with 5 U.S.C. § 552(b), any and all reasonably segregable portions of otherwise exempt materials be produced. To the extent the Request is denied, we expect to receive a *Vaughn* index identifying (1) the materials or portions thereof that you are withholding, (2) a detailed legal justification for withholding each material or portion thereof, and (3) your reasons for not invoking your discretionary powers to release the material in the public interest.

## IV.    Expedited Processing Request

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 21 C.F.R. § 20.44. As certified in the conclusion of this request, there is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

**1. The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.**

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute and regulations. 5 U.S.C. § 552(a)(6)(E)(v)(II). Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and public through, *inter alia*, press releases, magazines, books, reports, "know your rights" materials, fact sheets, educational pamphlets, and the ACLU website, are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating

125 Broad Street, Floor 18, New York, NY 10004 | jkaye@aclu.org | 212-549-2633



**AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION**

information").[3]

For instance, the ACLU regularly publishes the ACLU magazine, which reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 1 million readers. The ACLU also publishes regular updates and alerts via email and social media to millions of subscribers (both ACLU members and non-members), including broadcasting updates to over 8 million social media followers. The magazine as well as the email and social media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests and related news,[4] and ACLU attorneys are

---

[3] Other courts have likewise found that the ACLU and other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g., Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

[4] *See, e.g.*, Press Release, ACLU, Government Releases New Court Opinions Highlighting Further Abuse of Warrantless FISA Surveillance Program (July 21, 2023), https://www.aclu.org/press-releases/government-releases-new-court-opinions-highlighting-further-abuse-of-warrantless-fisa-surveillance-program; Press Release, ACLU, New Records Detail DHS Purchase and Use of Vast Quantities of Cell Phone Location Data (July 18, 2022), https://www.aclu.org/news/privacy-technology/new-records-detail-dhs-purchase-and-use-of-vast-quantities-of-cell-phone-location-data; Press Release, ACLU, ACLU Files FOIA Request Seeking Records Related to Detained Immigrants' Ability to Access Counsel (December 17, 2021), https://www.aclu.org/press-releases/aclu-files-foia-request-seeking-records-related-detained-immigrants-ability-access; Press Release, ACLU, ACLU Files FOIA Request to Uncover COVID Impact and Cost of Federal Executions (August 6, 2022), https://www.aclu.org/press-releases/aclu-files-foia-request-uncover-covid-impact-and-cost-federal-executions; Press Release, ACLU, New Records Detail How the FBI Pressures Police to Keep Use of Shady Phone Surveillance Technology a Secret (June 22, 2023), https://www.aclu.org/press-releases/new-records-detail-how-the-fbi-pressures-police-to-keep-use-of-shady-phone-surveillance-technology-a-secret#:~:text=WASHINGTON%20%E2%80%94%20Records%20obtained%20by%20the,disclosure%20of%20their%20use%20to; Press Release, ACLU, New Documents Reveal NSA Improperly Collected Americans' Call Records Yet Again (June 26, 2019), https://www.aclu.org/press-releases/new-documents-reveal-nsa-improperly-collected-americans-call-records-yet-again; Press Release, ACLU, ACLU and Center for Media Justice Sue FBI for Records on Surveillance of Black Activists (Mar. 21, 2019), https://www.aclu.org/press-releases/aclu-and-center-media-justice-sue-fbi-records-surveillance-black-activists#:~:text=NEW%20YORK%20%E2%80%94%20The%20American%20Civil,existence%20of%20so%2Dcalled%20%E2%80%9CBlack; Press Release, ACLU, ACLU, Privacy International Demand Government Disclose Nature and Extent of Hacking Activities (Dec. 21, 2018), https://www.aclu.org/press-releases/aclu-privacy-international-demand-government-disclose-nature-and-extent-hacking.

8



interviewed frequently for news stories about documents released through ACLU FOIA requests.[5] ACLU's analysis of FOIA documents routinely informs ACLU reports and other public education materials regarding government conduct and civil liberties issues; these materials are broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee.[6]

---

[5] *See, e.g.*, Corin Faife, *Feds Are Tracking Phone Locations With Data Bought From Brokers*, The Verge (July 18, 2022), https://www.theverge.com/2022/7/18/23268592/feds-buying-location-data-brokers-aclu-foia-dhs; Jessica Votipka, *ACLU Files Suit Against Grand Island School That Ended High School Newspaper*, Journal Star (Mar. 31, 2023), https://journalstar.com/news/state-and-regional/crime-and-courts/aclu-files-suit-against-northwest-public-schools/article_4c514454-abc7-533f-b133-498c140cd030.html; Charlie Savage, *N.S.A. Gathered Domestic Calling Records It Had No Authority to Collect*, N.Y. Times (June 26, 2019), https://www.nytimes.com/ 2019/06/26/us/telecom-nsa-domestic-calling-records.html; Rachel Frazin, *ACLU Sues FBI Over Black Activist Surveillance Records*, Hill, Mar. 21, 2019, https://thehill.com/policy/national-security/fbi/435143-fbi-sued-over-black-activist-surveillance-records; Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept (Feb. 8, 2017), https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program; Larry Neumeister, *Judge Scolds Government over Iraq Detainee Abuse Pictures*, The Associated Press (Jan. 18, 2017), https://www.apnews.com/865c32eebf4d457499c017eb837b34dc; Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes*, Wash. Post, Aug. 6, 2016, http://wapo.st/2jy62cW; Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program*, ABC (June 15, 2016), http://abcn.ws/2jy40d3; Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian (Mar. 17, 2016), https://www.theguardian.com/world/2016/mar/17/us-marshals-stingraysurveillance-airborne; David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret*, NPR (Dec. 9, 2015), http://n.pr/2jy2p71.

[6] *See, e.g.*, Press Release, ACLU, ACLU FOIA Litigation Reveals New Information About Plans to Expand ICE Detention in Colorado (July 9, 2025), https://www.aclu.org/press-releases/aclu-foia-litigation-reveals-new-information-about-plans-to-expand-ice-detention-in-colorado#:~:text=%E2%80%9CICE's%20planned%20expansion%20of%20immigration,The%20faciliti es%20include:; Press Release, ACLU, ACLU FOIA Litigation Reveals Information About Plans to Expand ICE Detention Facilities Nationwide (Apr. 11, 2025), https://www.aclu.org/press-releases/aclu-foia-litigation-reveals-information-about-plans-to-expand-ice-detention-facilities-nationwide; ACLU, *Bad Trip: Debunking the TSA's 'Behavior Detection' Program* (2017), https://www.aclu.org/publications/bad-trip-debunking-tsas-behavior-detection-program; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016), https://www.aclu.org/news/criminal-law-reform/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias; Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Mo*st (Aug. 8, 2016), https://www.aclu.org/blog/speak-freely/details-abound-drone-playbook-except-onesreally-matter-most; ACLU, *Leaving Girls Behind: An Analysis of Washington D.C.'s "Empowering Males of Color" Initiative* (2016), https://www.aclu.org/report/leaving-girls-behind; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015), https://www.aclu.org/blog/free-future/fbidocuments-reveal-new-information-baltimore-surveillance-flights; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order* 12333



The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, providing original editorial content and publishing many thousands of documents relating to the issues on which the ACLU is focused. *See* ACLU, *News and Commentary*, https://www.aclu.org/news. The ACLU also creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See id.* The ACLU's website also serves as a clearinghouse for news about ACLU cases, including analysis about case developments, and an archive of case-related documents.[7] Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.

The records requested are not for commercial use. As in past ACLU FOIA requests, the ACLU plans to analyze materials obtained through this Request and publish and disseminate newsworthy information to the public at no cost.

---

(Oct. 30, 2014), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-blackbox-executive-order-12333; *Targeted Killing FOIA Database*, ACLU (Dec. 21, 2012), https://www.aclu.org/foia-collections/targeted-killing-foia-database.

[7] *See, e.g.*, *ACLU v. ODNI—FOIA Lawsuit Seeking Records About Government Surveillance Under the USA Freedom Act*, ACLU Case Page, https://www.aclu.org/cases/aclu-v-odni-foia-lawsuit-seeking-records-about-government-surveillance-under-usa-freedom-act (last visited July 30, 2025); *ACLU v. DOJ—FOIA Lawsuit Seeking Information on Federal Agencies' Surveillance of Social Media*, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-seeking-information-federal-agencies-surveillance-social-media (last visited July 30, 2025); *ACLU v. DOJ—FOIA Case for Records Relating to Targeted Killing Law, Policy, and Casualties*, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-case-records-relating-targeted-killing-law-policy-and-casualties (last visited July 30, 2025); *Executive Order 12,333—FOIA Lawsuit*, ACLU Case Page, https://www.aclu.org/cases/executive-order-12333-foia-lawsuit (last visited July 30, 2025); *ACLU v. United States*, ACLU Case Page, https://www.aclu.org/cases/aclu-v-united-states (last visited July 30, 2025); *ACLU v. DOJ—FOIA Lawsuit Demanding OLC Opinion on "Common Commercial Service Agreements,"* ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-demanding-olc-opinion-common-commercial-service-agreements (last visited July 30, 2025); *FOIA Request for Justice Department Policy Memos on GPS Location Tracking*, ACLU Case Page, https://www.aclu.org/cases/foia-request-justice-department-policy-memos-gps-location-tracking (last visited July 30, 2025); *Florida Stingray FOIA*, ACLU Case Page, https://www.aclu.org/cases/florida-stingray-foia (last visited July 30, 2025); Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida*, (Feb. 22, 2015) https://www.aclu.org/news/national-security/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida.

125 Broad Street, Floor 18, New York, NY 10004 | jkaye@aclu.org | 212-549-2633



AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

### 2. The records sought are urgently needed to inform the public about actual or alleged government activity.

The records sought here—which concern potential changes to the accessibility of a safe, effective medication used in most U.S. abortions today—are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). Specifically, they pertain to whether FDA is considering the highest-quality and most relevant evidence when evaluating its regulation of mifepristone.

Mifepristone is FDA-approved as part of a two-drug regimen with misoprostol to end an early pregnancy. More than 7.5 million U.S. patients have used mifepristone,[8] and medication abortions now comprise nearly two-thirds of all U.S. abortions.[9] Mifepristone is also part of the superior drug regimen for managing early pregnancy loss, among other reproductive health indications.[10] Since its approval in 2000, these millions of patient uses and a robust body of peer-reviewed scientific and medical literature have demonstrated that mifepristone is extremely safe.

Given mifepristone's critical importance for reproductive health care, recent statements by FDA Commissioner Makary and HHS Secretary Kennedy that FDA is conducting a "complete review" of its mifepristone regulations—with potentially grave implications for patient access—have engendered substantial public interest.[11]

---

[8] *NDA 020687 & ANDA 091178, Mifepristone U.S. Post-Marketing Adverse Events Study through 12/31/2024*, U.S. Food & Drug Admin. (Dec. 31, 2024).

[9] Rachel K. Jones & Amy Friedrich-Karnik, *Medication Abortion Accounted for 63% of All US Abortions in 2023—An Increase from 53% in 2020*, The Guttmacher Institute (Mar. 19, 2024), https://www.guttmacher.org/2024/03/medication-abortion-accounted-63-all-us-abortions-2023-increase-53-2020.

[10] American Coll. of Obstetricians & Gynecologists, *Early Pregnancy Loss*, Practice Bulletin 200 (Nov. 2018), https://www.acog.org/clinical/clinical-guidance/practice-bulletin/articles/2018/11/early-pregnancy-loss; Ilana G. Dzuba, Daniel Grossman, & Courtney A. Schreiber, *Off-label Indications for Mifepristone in Gynecology and Obstetrics*, 92(3) Contraception, 203 (Sept. 2015), https://www.contraceptionjournal.org/action/showPdf?pii=S0010-7824%2815%2900259-0.

[11] *See, e.g.*, Sara Moniuszko, *FDA to Review "The Latest Data" on Mifepristone. What Could It Mean for Access to the Abortion Pill?*, CBS News (June 4, 2025), https://www.cbsnews.com/news/fda-review-mifepristone-abortion-pill-access/; Alejandra O'Connell-Domenech, *FDA Commissioner Pledges to Investigate Mifepristone*, The Hill (June 3, 2025), https://thehill.com/policy/healthcare/5330774-marty-makary-fda-mifepristone-review/; Susan Rinkunas, *RFK Jr. Orders Mifepristone Review as Anti-Abortion Groups Push for Ban*, Guardian (May 14, 2025), https://www.theguardian.com/us-



On June 2, Commissioner Makary confirmed in a letter to Sen. Josh Hawley that FDA's review of mifepristone is underway.[12] The ACLU was one of the first organizations to broadcast the news that FDA was undertaking a new review of its mifepristone regulations.[13]

In the past, when FDA has made changes to mifepristone's labeling or REMS, it has published the parameters of its review—such as the criteria and time period used for its literature search and the categories of evidence it excluded from the review—together with the release of the modified regulations. For instance, FDA announced in December 2021 that after a 6-month regulatory review, it intended to permanently eliminate the in-person dispensing Element to Assure Safe Use ("ETASU") for mifepristone, maintain the other two ETASU, and add a new pharmacy certification ETASU. But it was not until January 2023, when FDA released the updated Mifepristone Shared System REMS and its two REMS modification review memoranda, that the scope of FDA's literature review and other evidentiary parameters were available to the public. In other words, the last time a similar process was undertaken with respect to mifepristone, by the time FDA released information about the scope of its review, it was too late for the public to try to supply additional evidence within those parameters.

Ensuring greater transparency around FDA's review will serve the public interest. Indeed, FDA has expressly invited public comment on potential REMS modifications for other drugs. For example, in 2022, FDA established a public docket for comments regarding a potential modification to the opioid analgesic REMS, specifically soliciting public input on mandatory statutory considerations such as the safety advantages of the modification, the impact of the modification on patients, and

---

news/2025/may/14/rfk-jr-fda-abortion-pill-mifepristone; Aria Bendix, *How Shoddy Science Is Fueling a Charge to Restrict Abortion Pill Access*, NBC News (May 19, 2025), https://www.nbcnews.com/health/womens-health/shoddy-science-fueling-charge-restrict-abortion-pill-access-rcna207034.

[12] Alejandra O'Connell-Domenech, *FDA Commissioner Pledges to Investigate Mifepristone*, The Hill (June 3, 2025), https://thehill.com/policy/healthcare/5330774-marty-makary-fda-mifepristone-review/.

[13] Press Release, ACLU, Trump Administration Announces that FDA Will Consider Imposing Greater Restrictions on Medication Abortion Nationwide (May 14, 2025), https://www.aclu.org/press-releases/trump-administration-announces-that-fda-will-consider-imposing-greater-restrictions-on-medication-abortion-nationwide.

125 Broad Street, Floor 18, New York, NY 10004 │ jkaye@aclu.org │ 212-549-2633



strategies to minimize burdens on pharmacies, then publishing those comments for public review.[14]

Failing to disclose the parameters, scope, or focus of the mifepristone review that Commissioner Makary announced on June 2 could have especially significant consequences now. To start, the FDA has already provided less information to the public about the review than usual: Whereas FDA publicized at the start of its last regulatory review (in May 2021) that it was specifically "reviewing the elements of the REMS for Mifeprex and its approved generic,"[15] Commissioner Makary did not specify in his June 2 letter whether FDA's review will encompass mifepristone's REMS only, its REMS and labeling, or its REMS, labeling, and approval. Moreover, while FDA sometimes considers as part of a mifepristone regulatory review "information provided by advocacy groups,"[16] unless those materials are submitted to FDA on a public citizen petition docket, the public has no way of knowing in advance what data or advocacy materials are before FDA as it considers changes to mifepristone's regulations—much less any way of knowing what data FDA is *affirmatively seeking* as a focus of its review and what data FDA *is excluding* (or intends to exclude) from its review. As a result, the public (including mifepristone researchers and other scientific experts) have no opportunity to respond to and/or supplement those submissions.

The circumstances surrounding FDA's current mifepristone review underscore the need for greater transparency. In recent years, the prevalence of "junk science" with respect to mifepristone has been widely reported and remains a subject of significant public concern, particularly as it implicates the integrity of FDA's regulatory process.[17] In announcing the new regulatory review, Secretary Kennedy

---

[14] *Providing Mail-Back Envelopes and Education on Safe Disposal With Opioid Analgesics Dispensed in an Outpatient Setting; Establishment of a Public Docket; Request for Comments*, U.S. Food & Drug Admin. (April 21, 2022), https://www.regulations.gov/document/FDA-2022-N-0165-0001.

[15] Joint Mot. to Stay Case Pending Agency Review at 2, Purcell v. Kennedy (formerly Chelius v. Becerra), No. 1:17-cv-00493-JAO-RT (D. Haw. May 7, 2021), ECF No. 148.

[16] *Questions and Answers on Mifepristone for Medical Termination of Pregnancy Through Ten Weeks Gestation*, U.S. Food & Drug Admin. (Feb. 11, 2025), https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/questions-and-answers-mifepristone-medical-termination-pregnancy-through-ten-weeks-gestation.

[17] Keren Landman, *A Convenient Piece of Junk Science*, Atlantic (May 24, 2025), https://www.theatlantic.com/health/archive/2025/05/mifepristone-abortion-rfk-fda/682939/; Jessica Glenza, *Junk Science is Cited in Abortion Ban Cases. Researchers Are Fighting the 'fatally flawed'*



indicated[18] that FDA's decision-making will center on a recent six-page, self-published PDF[19] by the Ethics and Public Policy Center ("EPPC"), an anti-abortion advocacy organization "working to apply the riches of the Jewish and Christian traditions to contemporary questions of law, culture, and politics."[20] The EPPC paper purports to disrupt FDA's longstanding determination that mifepristone's "efficacy and safety have become well-established by both research and experience, and serious complications have proven to be extremely rare."[21] Secretary Kennedy described the paper's conclusions as "alarming" and asserted to a Senate committee that, "clearly, [the paper] indicates that, at the very least, the [mifepristone] label should be changed."[22]

However, serious concerns have been raised about the integrity of the EPCC paper, including its lack of peer review, the validity of its criteria for serious adverse events, and the lack of transparency around its data sources and methodology—urgently warranting greater sunlight before FDA makes consequential regulatory decisions based on its asserted findings.[23] When questioned about FDA's plans for

*Works*, Guardian (May 3, 2024), https://www.theguardian.com/world/2024/apr/28/junk-science-papers-abortion-cases; Selena Simmons-Duffin, *Research at the Heart of a Federal Case Against the Abortion Pill Has Been Retracted*, NPR (Feb. 9, 2024), https://www.npr.org/sections/health-shots/2024/02/09/1230175305/abortion-pill-mifepristone-retraction-supreme-court; Melissa Quinn, *ACLU Warns Supreme Court that Lower Court Abortion Pill Decisions Relied on "Patently Unreliable Witnesses"*, CBS News (Jan. 30, 2024), https://www.cbsnews.com/news/supreme-court-abortion-pill-aclu-lower-courts/; Jack Resneck Jr., *Judge's Ruling on Mifepristone Has No Basis in Medical Science*, American Medical Association (April 12, 2023), https://www.ama-assn.org/about/leadership/judge-s-ruling-mifepristone-has-no-basis-medical-science.

[18] *Hearing on Fiscal Year 2026 Department of Health and Human Services Budget* [hereinafter "*Hearing on HHS Budget*"], U.S. S. Comm. on Health, Education, Labor & Pensions, at 1:49-1:50 (May 14, 2025, at 1:30 PM), https://www.help.senate.gov/hearings/hearing-on-fiscal-year-2026-department-of-health-and-human-services-budget.

[19] Jamie Bryan Hall & Ryan T. Anderson, *The Abortion Pill Harms Women: Insurance Data Reveals One in Ten Patients Experiences a Serious Adverse Event*, Ethics & Public Policy Center (Apr. 28, 2025), https://eppc.org/wp-content/uploads/2025/04/25-04-The-Abortion-Pill-Harms-Women.pdf.

[20] Ethics & Public Policy Center Home Page, https://eppc.org/ (last visited July 31, 2025).

[21] Ctr. for Drug Eval. & Res., *Clinical Review of NDA 020687/S-020-Mifeprex* at 12 (Mar. 29, 2016), U.S. Food & Drug Admin., https://www.accessdata.fda.gov/drugsatfda_docs/nda/2016/020687Orig1s020MedR.pdf.

[22] *Hearing on HHS Budget*, supra note 18, at 1:49:30-1:49:50.

[23] *See, e.g.*, *How Shoddy Science Is Fueling a Charge to Restrict Abortion Pill Access*, supra note 11; Glenn Kessler, *Digging into the Math of a Study Attacking the Safety of the Abortion Pill*, Washington

125 Broad Street, Floor 18, New York, NY 10004 | jkaye@aclu.org | 212-549-2633



mifepristone at a May 22 Senate hearing, Commissioner Makary stated that "the underlying data set" for the EPPC paper "is not available" but that FDA intends to "take a look at those data as they become available."[24] It is unclear whether FDA is now affirmatively soliciting the underlying data and methodology from EPPC; whether FDA has already received such information from EPPC; and if so, what the data and methodology entail. To ensure the agency has before it the most relevant and highest-quality evidence, including evidence and scientific analysis that may inform, balance, or counter the EPPC paper and other similar submissions, it is urgent and essential that there be greater transparency around any communications between FDA and interested parties on mifepristone.

In short, there is an urgent need to inform the public about FDA's activities regarding mifepristone—a topic directly relating to the integrity of drug regulation, a core government activity that impacts millions of people in this country, and a topic of great interest to the media, legislators, advocacy groups, potential users of mifepristone, and the public broadly. Expedited processing is therefore appropriate under 5 U.S.C. § 552(a)(6)(E) and 21 C.F.R. § 20.44.

## V.    <u>Fee Waiver/Limitation Request</u>

For two separate reasons, the ACLU requests that any fees associated with responding to this Request be waived pursuant to 5 U.S.C. § 552(a)(4)(A) and 21 C.F.R. § 20.46, consistent with Congress's legislative intent. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (internal quotation marks and citation omitted)); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Educ.*, 593 F. Supp. 2d 261, 268 (D.D.C. 2009) (statute is designed to "remove the roadblocks and technicalities which have been used by . . . agencies to deny [fee] waivers" (internal quotation marks and citation omitted)).

---

Post (May 12, 2025), https://www.washingtonpost.com/politics/2025/05/12/abortion-pill-medication-abortion-study-mifepristone/; Landman, *supra* note 17; Letter from Society of Family Planning to Commissioner Martin Makary, MD, MPH (May 2, 2025), https://societyfp.org/wp-content/uploads/2025/05/SFP-Letter-to-Commissioner-Makary_5.2.2025.pdf.

[24] *A Review of the President's Fiscal Year 2026 Budget Request for the Food and Drug Administration*, U.S. S. Subcomm. on Agric., Rural Dev., Food and Drug Admin., and Related Agencies, at 1:13:06-1:13:29 (May 22, 2025), https://www.appropriations.senate.gov/hearings/a-review-of-the-presidents-fiscal-year-2026-budget-request-for-the-food-and-drug-administration.

125 Broad Street, Floor 18, New York, NY 10004 | jkaye@aclu.org | 212-549-2633

**ACLU**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

**1. The ACLU qualifies for a fee waiver because disclosure of the requested records is in the public interest and is not primarily in the ACLU's commercial interest.**

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 21 C.F.R. § 20.46(a), any fees should be waived or reduced if disclosure is (1) "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government" and (2) "not primarily in the commercial interest of the requester." Both requirements are met here.

*a. Disclosure is in the public interest as it is likely to contribute significantly to the general public's understanding of the activities of the government.*

As discussed above, this Request is necessary because of the serious questions surrounding FDA's activities regarding mifepristone, a topic of great interest to the media, legislators, advocacy groups, potential users of mifepristone, and the public broadly. The records sought are certain to contribute to the public's understanding. *See supra* Part (IV)(2).

*b. Disclosure is not primarily in the commercial interest of the ACLU.*

The ACLU is not filing this request to further a commercial interest. As detailed at *supra* Part (IV)(1), the ACLU—a 501(c)(3) nonprofit organization—publishes press releases, commentaries, magazines, books, reports, emails, social-media postings, newsletters, "know your rights" factsheets, and other public education materials relating to government conduct and civil rights and liberties, which are widely disseminated for no cost or for a nominal fee. The ACLU routinely analyzes and disseminates information obtained through FOIA requests in furtherance of that work. *See supra* notes 4, 6-7. Moreover, because the ACLU qualifies as a "representative of the news media" and has an interest in "using the information for news dissemination purposes," *see infra* Part (V)(2), the Request does not serve a commercial interest. 21 CFR § 20.46(c)(1).

In short, because disclosure is both in the public interest and not primarily in the commercial interest of the Requestor, a fee waiver or reduction pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 21 C.F.R. § 20.46(a) is warranted.

16



**2. The ACLU also qualifies for a fee waiver because it is a representative of the news media, and the records are not sought for commercial use.**

The ACLU is also entitled to a fee waiver on the independent ground that the ACLU qualifies as a "representative of the news media." 5 U.S.C. § 552(a)(4)(A)(ii)(II). The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III); *see supra* Part (IV)(1). Indeed, numerous courts have found that the ACLU, and other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's, are "representatives of the news media." *See, e.g.*, *Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of FOIA); *Serv. Women's Action Network v. Dep't of Defense*, 888 F. Supp. 2d 282 (D. Conn. 2012) (concluding that the ACLU and co-requesters were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding nonprofit public interest group to be "primarily engaged in disseminating information"); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. Dep't of Justice*, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[25]

---

[25] Courts have found organizations to be "representatives of the news media" even when they engage in litigation and lobbying activities beyond their dissemination of information and public education activities. *See, e.g.*, *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; *see*

17



Federal agencies routinely waive fees associated with responding to FOIA requests for the ACLU,[26] and the same conditions are satisfied here. Because disclosure of the requested documents is in the public interest and not primarily in the commercial interest of the Requestor, and because the ACLU is a representative of the news media, the ACLU is entitled to a total waiver of fees associated with this Request and should, in no event, be required to pay more than reasonable standard charges for document duplication. If the fee waiver is not granted in full, please contact us immediately upon making such a determination so that we can discuss arrangements and avoid needless delay.

*** 

Thank you for your prompt attention to this request. The undersigned affirm and certify that all of the information provided, including the information supporting the request for expedited processing, is true and correct to the best of our knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi); § 21 C.F.R. 20.44. We look forward to a determination regarding expedited processing within 10 days pursuant to 5 U.S.C. § 552(a)(6)(E)(ii).

Please email Julia Kaye at jkaye@aclu.org and Rachel Reeves at rreeves@aclu.org if you have any questions or wish to obtain further information about the nature of the documents in which we are interested. As noted at *supra* Part (III), if the Request is denied in whole or in part, the ACLU asks that you justify all deletions by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material.

The records should be sent by email to jkaye@aclu.org and rreeves@aclu.org, and in hard copy, where applicable, to Julia Kaye c/o ACLU Foundation, 125 Broad Street, 18th Floor, New York, NY 10004.

---

*also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53–54.

[26] For instance, in 2025, the ACLU has already had fee-waiver requests granted by, *inter alia*, the Bureau of Indian Affairs ("news media" and public interest), the Centers for Disease Control and Prevention ("news media"), the Centers for Medicare and Medicaid Services (public interest), the Federal Emergency Management Agency (public interest), and the U.S. Department of Veteran Affairs ("media category").

18



**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

Dated: August 1, 2025

Sincerely,

/s/ Julia Kaye

American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
jkaye@aclu.org

/s/ Rachel Reeves

American Civil Liberties Union
Foundation
915 15th Street NW
Washington, DC 20005
(212) 549-2633
rreeves@aclu.org

19

# EXHIBIT B

Mail - Julia Kaye - Outlook

 **Outlook**

## FOI Request Received

**From** noreply@fda.gov <noreply@fda.gov>

**Date** Fri 8/1/2025 4:14 PM

**To** Julia Kaye <jkaye@aclu.org>

**This Message Is From an Untrusted Sender**
You have not previously corresponded with this sender.

**\*\*\* This is an automated message. Please do not reply to this email. \*\*\***

Reference: FDA25116045

Dear Requester,

This is to confirm that you submitted a request for record(s) from the Food and Drug Administration pursuant to the Freedom of Information Act.

FOIA staff will review your request to determine whether it has sufficient information to be processed; if so, you will receive another email as a formal acknowledgement of your request, with a control number for your request.
If your request is not sufficiently described, or if there are any other deficiencies with your submission, FOIA staff will contact you via telephone or email.

# EXHIBIT C

 **Outlook**

---

**Request FDA-FOIA-2025-9371-OES-1**

---

**From** mailbox.fdsa_fwa_foia@fda.hhs.gov <mailbox.fdsa_fwa_foia@fda.hhs.gov>

**Date** Mon 9/8/2025 5:11 PM

**To** Julia Kaye <jkaye@aclu.org>

---

**This Message Is From an External Sender**
This message came from outside your organization.

---

FDA-FOIA-2025-9371-OES-1

Hi Julia,

Confirming receipt of your email with the requested email domain names for the US and State Congressional offices to perform an E-Discovery search. Apologies for a delay in response as we learn our new FOIA tracking system

Thank you for your patience,

/S

**Sara M. Ashton, J.D.**

*FOIA Officer, Division of Headquarters Freedom of Information*

**Office of Operations | Office of Management and Enterprise Services**

Tel: MS Teams (313) 393-8180 | Mobile: (202) 666-9498

 Outlook

---

**Re: Request FDA-FOIA-2025-9371-OES-1**

**From** Julia Kaye <jkaye@aclu.org>

**Date** Mon 8/18/2025 3:24 PM

**To**   mailbox.fdsa_fwa_foia@fda.hhs.gov <mailbox.fdsa_fwa_foia@fda.hhs.gov>

**Cc**   Rachel Reeves <RReeves@aclu.org>

Good afternoon, Ms. Ashton,

I am just writing to confirm that you received the message below and were able to proceed with e-discovery.

Many thanks,
Julia

**Julia Kaye**

Pronouns: she, her

Senior Staff Attorney, Reproductive Freedom Project

American Civil Liberties Union Foundation

125 Broad St., 18th floor, New York, NY 10004

212.284.7358 | jkaye@aclu.org



*This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.*

---

**From:** Julia Kaye <jkaye@aclu.org>
**Sent:** Friday, August 8, 2025 5:21 PM
**To:** mailbox.fdsa_fwa_foia@fda.hhs.gov <mailbox.fdsa_fwa_foia@fda.hhs.gov>
**Cc:** Rachel Reeves <RReeves@aclu.org>
**Subject:** Re: Request FDA-FOIA-2025-9371-OES-1

Ms. Ashton,

Many thanks for reaching out for clarification.  Please search: (1) all email domains associated with the U.S. House of Representatives, (2) all email domains associated with the U.S. Senate, and (3) the attached state-official email domains.

We'd appreciate confirmation that you received this email and that you now have the information you need to proceed with e-discovery.  Please do not hesitate to contact us again if any further questions arise.

Warmly,
Julia

**Julia Kaye**

Pronouns: she, her

Senior Staff Attorney, Reproductive Freedom Project

American Civil Liberties Union Foundation

125 Broad St., 18th floor, New York, NY 10004

212.284.7358 | jkaye@aclu.org



*This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.*

---

**From:** mailbox.fdsa_fwa_foia@fda.hhs.gov <mailbox.fdsa_fwa_foia@fda.hhs.gov>
**Sent:** Thursday, August 7, 2025 2:02 PM
**To:** Julia Kaye <jkaye@aclu.org>
**Subject:** Request FDA-FOIA-2025-9371-OES-1

**This Message Is From an External Sender**
This message came from outside your organization.

FDA-FOIA-2025-9371-OES-1
Good Afternoon,
I am working on putting your request into our E-Discovery system, pertaining to the second part of your request. Referring to page 5 of your letter, (d) and (e)"state officials or personnel," do you mean the individuals serving in the US House of Representatives or the individuals serving in each of the states' Congress and governmental offices?
If you mean the latter, please provide a comprehensive list of all of the email domains you would like searched through our E-Discovery system otherwise we will just search the domains for the US Senate and the US House of Representatives. Please advise and I look forward to your response.
Thank you,
/S
**Sara M. Ashton, J.D.**
*FOIA Officer,Â Division of Headquarters Freedom of Information*
**Office of OperationsÂ |Â Office of Management and Enterprise Services**
Tel: MS Teams (313) 393-8180 | Mobile: (202) 666-9498